Opinion
 

 SCOTLAND, J.
 

 This case involves a dispute between cities and a county over the lifeblood of local governments: revenue.
 

 As a general rule, counties must share with their cities the fines and forfeitures collected upon convictions in criminal cases. (Pen. Code § 1463; further statutory references are to the Penal Code unless otherwise specified.) An exception exists for fines collected by a county probation officer “as a condition of the granting of probation or as a part of the terms of probation, . . .” (§ 1203.1.) With limited exceptions, such fines shall be placed in the general fund of the county treasury for the use and benefit of the county.
 
 (Ibid,.)
 

 [1]
 

 At issue here are fines imposed in connection with a conditional sentence. (§ 1203.) As distinguished from “probation” supervised by a probation officer, a “conditional sentence”—formerly known as court probation, summary probation, or informal probation (64 Ops.Cal.Atty.Gen. 903, 904-905 (1981))—means “the suspension of the imposition or execution of sentence and the order of revocable release in the community subject to the conditions established by the court
 
 without the supervision of the probation
 
 officer.” (§ 1203, subd. (a), italics added.)
 

 
 *751
 
 Plaintiffs, cities within San Bernardino County (the cities), brought this action against the county and its auditor and controller (collectively the county), challenging the county’s failure to allocate to the cities their claimed share of fines collected by the county probation department from persons given conditional sentences in the municipal court.
 
 [2]
 
 The cities contend that, because persons released on “conditional sentence” are not placed on “probation” as those terms are defined in section 1203, the fines collected from them must be divided between the county and the cities as provided in section 1463. The county retorts that persons released on conditional sentence are, in effect, on probation because their fines are imposed as part of the terms of revocable release and, pursuant to court order, are collected by employees of the chief probation officer. The county also contends that applying section 1203.1 only to “formal probation” would lead to absurd and unjust results, inter alia, “a windfall to the cities, substantially undeserved and unearned” because the services of the county probation department are utilized to collect the fines.
 

 We agree with the superior court that the county’s arguments are foreclosed by the unambiguous language of section 1203.1 which limits its allocation provision to fines imposed as a condition of the granting of
 
 probation
 
 or as part of the terms thereof, and by the definitional language of section 1203, subdivision (a), which unequivocally distinguishes probation from a
 
 conditional sentence.
 
 Because section 1203.1 does not apply to fines imposed in a conditional sentence, section 1463 requires counties to share with their cities the revenue collected as fines from persons released into the community on “conditional sentence.” Accordingly, we shall affirm the superior court’s issuance of a peremptory writ of mandate ordering the county to comply with section 1463.
 

 Facts
 

 In this action for a writ of mandate and declaratory relief, deposition excerpts and declarations established the following:
 

 When a defendant is convicted in San Bernardino County Municipal Court and a fine is imposed, the funds received are allocated in one of three ways. If the fine is paid in full at the time of pronouncement of judgment, the defendant pays it to the court clerk who deposits it in the county treasury for division with the cities pursuant to section 1463. If the defendant is placed on probation, the fine is collected (usually in installments) by the probation
 
 *752
 
 department and is placed in the county’s general fund pursuant to section 1203.1. If a conditional sentence is imposed, the fine is collected (again, usually in installments) by the accounting division of the probation department and presently is being placed in the county’s general fund allegedly under the authority of section 1203.1. Only this last disposition is at issue here.
 

 The accounting division of the probation department provides accounting and collection services for the department. It establishes accounts for each client, bills each account monthly, and monitors whether each account is timely paid. Collection officers have discretion to pursue delinquent accounts by letter, by telephone, by requesting clients to appear at the probation department, or by other means. When a client fails to pay within a reasonable period, the division is required to so inform the court. The division does not have authority to extend the period in which to pay fines, but where appropriate it recommends that clients seek to have their fines judicially modified. Other than to monitor the payment of fines, the accounting division does not supervise persons released on conditional sentence.
 

 None of the accounting division’s employees are deputy probation officers. Nor are they peace officers as defined in section 830.5. However, the accounting division is supervised by a director of administrative services, who is a deputy probation officer.
 

 When a municipal court imposes a term of community service as part of a conditional sentence, it refers the matter to the probation department’s work sentence coordinators, who are probation officers and peace officers under section 830.5. These officers review the case to determine an appropriate community placement, work with the client if problems develop, and may visit the placement to see that the client is attending and completing his or her term.
 

 The superior court perceptively ruled as follows: “There are no disputed material facts. The choice of sentence^] ‘probation’ (sometimes referred to as formal probation) or ‘conditional sentence’ (sometimes referred to as summary or informal probation)^] is a decision for the Municipal Court. Penal Code § 1203 describes each type of sentence and they are different. When the Court sentences to ‘conditional sentence’ there is no probation supervision as a matter of law. The county cannot alter the legal effect of this sentence by using probation officers as the fine collecting agent or by using probation officers to conduct work release programs. The order of the Court imposing the sentence as either probation or conditional sentence determines the disposition of fines. If it is probation, under Penal Code § 1203.1, the
 
 *753
 
 fines go to the county. If it is a conditional sentence, it is not a fine ‘as a condition of the granting of probation or as part of the terms of probation’ under this section and the fines are allocated and distributed pursuant to Penal Code § 1463.”
 

 A peremptory writ of mandate was issued directing the county ‘to allocate, pay and transfer to [the cities] pursuant to the provisions of [section 1463] each . . . city’s lawful share of the fines, forfeitures and deposits collected by San Bernardino County from defendants convicted in San Bernardino County Municipal Court and placed on ‘conditional sentence’ as defined in [section 1203] (including ‘court probation,’ ‘summary probation,’ ‘conditional and revocable release’ or ‘revocable release’) including, but not limited to, each city’s allocable share of the fines collected by the Probation Accounting Division of the County Probation Department or any other division of the County Probation Department.” This appeal followed.
 
 [3]
 

 Discussion
 

 Except as otherwise specified by statute, section 1463 requires counties to share with their cities the fines collected upon conviction in any municipal or justice court.
 
 [4]
 
 The purpose of this division of revenue is
 
 *754
 
 twofold. On one hand, it is intended to “reimburse the counties for the added caseload in their municipal and justice courts” caused by arrests made by city officers.
 
 (County of Los Angeles
 
 v.
 
 City of Alhambra
 
 (1980) 27 Cal.3d 184, 194 [165 Cal.Rptr. 440, 612 P.2d 24].) On the other hand, it provides “ ‘that the city whose employee made the original arrest should participate in the distribution of a subsequently imposed fine in order to reimburse the city [for] its expenses in law enforcement.’” (65 Ops.Cal.Atty.Gen. 618, 625 (1982), quoting 25 Ops.Cal.Atty.Gen. 122, 123 (1955).)
 

 In this case, we consider one statutory exception to this revenue-sharing requirement: section 1203.1, which authorizes certain fines to be placed in the general fund of the county treasury for the exclusive use and benefit of the county. The county asserts that this exception should govern fines collected from persons given conditional sentences. The contention tenders an issue of statutory construction, the paramount principle of which is to ascertain and effectuate the intent of the Legislature.
 
 (Viking Pools, Inc.
 
 v.
 
 Maloney
 
 (1989) 48 Cal.3d 602, 606 [257 Cal.Rptr. 320, 770 P.2d 732];
 
 In re Michael G.
 
 (1988) 44 Cal.3d 283, 289 [243 Cal.Rptr. 224, 747 P.2d 1152].) In determining intent, we look first to the words of the statute. If its language is clear and unambiguous, there is no need for construction.
 
 (Viking Pools, supra,
 
 at p. 606;
 
 see County of Los Angeles
 
 v.
 
 Emme
 
 (1940) 42 Cal.App.2d 239, 242 [108 P.2d 695].) Such is the case here.
 

 Section 1203.1 provides that, with exceptions not pertinent here, “all fines collected by a county probation officer in any of the courts of this
 
 *755
 
 state, as a condition of the granting of probation or as a part of the terms of probation, shall be paid into the county treasury and placed in the general fund for the use and benefit of the county.” (See fn. 1,
 
 ante.)
 
 “Probation” is defined as “the suspension of the imposition or execution of sentence and the order of conditional and revocable release in the community
 
 under the supervision of the probation
 
 officer.” (§ 1203, subd. (a), italics added.)
 

 None of the persons in this case are being released under orders calling for supervision by the probation officer. Rather, as the cities allege in their first amended complaint, and as the county admits in its answer, the individuals at issue are being released on conditional sentence. “Conditional sentence” is defined as “the suspension of the imposition or execution of a sentence and the order of revocable release in the community subject to the conditions established by the court
 
 without the supervision of the probation officer.”
 
 (§ 1203, subd. (a), italics added.) The authority to impose conditional sentences is granted by section 1203b, which provides: “All courts shall have power to suspend the imposition or execution of a sentence and grant a conditional sentence in misdemeanor and infraction cases without referring such cases to the probation officer. Unless otherwise ordered by the court, persons granted a conditional sentence in the community shall report only to the court and the probation officer shall not be responsible in any way for supervising or accounting for such persons.”
 

 Because the orders in question do not call for supervision by the probation officer, they cannot meet the definition of “probation” and, thus, cannot invoke the provisions of section 1203.1.
 

 The county disagrees. It argues that, although the orders are “conditional sentences,” they in effect are “a form of probation” because they require the defendants to pay fines to the accounting division of the county probation department and often require compliance with other conditions such as performance of community service. This contention has no merit.
 

 While the orders require payment of fines to the county probation department and impose other conditions of release, nothing in the orders compels the department to supervise compliance with these conditions. That the probation department in fact monitors fine payments; pursues delinquent accounts by letter, telephone, or by requesting defendants to appear at the probation department; informs the court if fine are not paid within a reasonable period; and arranges and monitors the performance of community service does not transform the conditional sentences into probation orders. As the superior court recognized, an order imposing probation or conditional sentence is issued by a court and remains in effect until it expires or is modified by the court or a reviewing court. Because the nature of the order
 
 *756
 
 is determined exclusively by the court, no decision by the county to use probation officers to monitor the collection of fines and/or a defendant’s participation in community service can transform an order for conditional sentence into one for probation.
 
 [5]
 

 The county’s reliance on 64 Ops.Cal.Atty.Gen. 903,
 
 supra,
 
 for the proposition that “probation” includes a “conditional sentence” is misplaced. There, the Attorney General concluded the word “probation” as used in several Vehicle Code sections added or amended by chapter 940 of the Statutes of 1981 referred to probation as authorized by the Penal Code. (64 Ops.Cal.Atty.Gen.,
 
 supra,
 
 at p. 904.) Because at the time section 1203 defined “probation” as “the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community,” without differentiating between formal and informal probation, the Attorney General concluded that both types of probation had been incorporated into the Vehicle Code. (64 Ops.Cal.Atty.Gen.,
 
 supra,
 
 at pp. 904-905.) However, the amendment of section 1203 in 1982 to separately define “probation” and “conditional sentence” rendered this opinion obsolete.
 

 In fact, subsequent to the aforesaid amendment, the Attorney General issued an opinion adverse to the county’s position. The opinion states: “The use of the words ‘condition of probation’ and ‘part of the terms of probation’ in section 1203.1 indicates that the Legislature intended section 1203.1 to apply only to such supervised probation and not so-called summary probation under which the probation officer is ‘not responsible in any way for supervising or accounting for such persons.’ (§ 1203b.) At the time the pertinent language of section 1203.1 was enacted (Stats. 1939, ch. 986, § 1) all probation was supervised. [Citation.]” (66 Ops.Cal.Atty.Gen. 480, 482, fn. 5 (1983).) Opinions of the Attorney General are entitled to great respect from this court.
 
 (Sonoma County Bd. of Education
 
 v.
 
 Public Employment Relations Bd.
 
 (1980) 102 Cal.App.3d 689, 699 [163 Cal.Rptr. 464].) As explained above, we agree with the Attorney General’s interpretation of section 1203.1.
 

 The county suggests, however, that we should ignore the unambiguous language of the statutes and conclude that the revenue allocation provision of section 1203.1 applies to conditional sentence fines payable through the county probation department because a contrary construction would create “absurd results.” (See
 
 People
 
 v.
 
 Clark
 
 (1990) 50 Cal.3d 583, 605 [268 Cal.Rptr. 399, 789 P.2d 127].)
 

 
 *757
 
 Pointing to the sixth paragraph of section 1203.1—which provides in pertinent part, “should the probationer violate any of the terms or conditions imposed by the court in the matter, it shall have authority to modify and change any and all such terms and conditions and to reimprison the probationer in the county jail within the limitations of the penalty of the public offense involved”—the county argues that, if the term “probationer” does not include persons released on conditional sentence, the court would lack the crucial power to deal with violations of the conditions of release. This contention overlooks section 1203.2. By its terms, a conditional sentence is “revocable.” (§ 1203, subd. (a).) If the conditions of release are violated, section 1203.2 permits the defendant to be rearrested and brought before the court, which may revoke and terminate the conditional sentence. Upon revocation and termination, the court may impose sentence or execute sentence if it was imposed and execution thereof was suspended.
 

 The county also points to the second paragraph of section 1203.1—which provides in pertinent part, “In all cases of probation the court may require as a condition of probation that the probationer go to work and earn money for the support of his or her dependents or to pay any fine imposed . . .”—and argues that, if the term “probation” does not include conditional sentence, the court would lack the authority to order persons released on conditional sentence to work. Similarly, the county contends that the court would be powerless to order persons released on conditional sentence to participate in counseling or education programs as provided in the fifth paragraph of section 1203.1. Assuming for the purpose of discussion (but not deciding) that these consequences flow from the literal construction of section 1203.1, they are not necessarily absurd. In situations where an order to work and/or participate in counseling or education programs is deemed appropriate and necessary by the trial court, it has the option to place the defendant on probation rather than conditional sentence.
 

 Next, in support of its contention that section 1203.1 encompasses fines imposed in conditional sentences, the county cites a bill introduced in the Assembly in 1989. If enacted, the bill would have limited the fine allocation provision of section 1203.1 to those fines collected by a county probation officer “who is actively supervising a case pursuant to an order of any court of this state, . . .” (Assem. Bill No. 363 (1989 Reg. Sess.).) The county argues that this proposed legislation “would have been [unnecessary] if it had been accepted such were already occurring under the existing statutory scheme.” We are not persuaded. “Unpassed bills, as evidences of legislative intent, have little value.”
 
 (Dyna-Med, Inc.
 
 v.
 
 Fair Employment & Housing Com.
 
 (1987) 43 Cal.3d 1379, 1396 [241 Cal.Rptr. 67, 743 P.2d 1323].) This is particularly true where, as here, the bill’s legislative history is limited to its introduction and referral to an Assembly committee. The
 
 *758
 
 introduction of a bill demonstrates nothing more than the views of the member who introduced it.
 

 In yet another attempt to justify its claim to the fine revenue, the county contends that, even if section 1203.1 does not authorize it to keep the revenue, the county need not share the fines with the cities pursuant to section 1463 because that section applies only to fines collected by the municipal and justice courts, and not to fines collected by employees of the probation department. We disagree. Section 1463, subdivision (a), applies to “All fines . . . collected upon
 
 conviction
 
 ... in any municipal court or justice court . . .” (Italics added.) It is a general rule of statutory construction that modifying phrases are to be applied to the words immediately preceding them and are not to be construed as extending to more remote phrases.
 
 (People
 
 v.
 
 Corey
 
 (1978) 21 Cal.3d 738, 742 [147 Cal.Rptr. 639, 581 P.2d 644];
 
 People
 
 v.
 
 Logan
 
 (1987) 190 Cal.App.3d 599, 604 [235 Cal.Rptr. 547].) Under this rule, it is the “conviction," not the “collection,” which must occur in municipal or justice court in order for section 1463 to apply.
 

 Lastly, the county argues that the exception of section 1203.1 should be construed to apply to fines in conditional sentences in order to avoid an unjust result stemming from the following scenario: When a city police officer makes an arrest, the offender is delivered to a jail funded by the county, is prosecuted by a district attorney employed by the county, perhaps is defended by a public defender paid by the county, and, when fined, is ordered to pay the fine to the probation department funded by the county. Thus, the county contends: “To allow the County to retain the fine money at issue is the only fair and reasonable result. To share the money with the cities would result in a windfall to the cities, substantially undeserved and unearned.”
 

 This claim of unfairness overlooks the fact that the city has the financial burden of paying for law enforcement which initiated the foregoing scenario. Moreover, it ignores the Legislature’s policy determination that fine revenues must be shared with cities to help cover the costs of law enforcement except where the county incurs the substantial expenses of formal probation, including such matters as investigations, reports and court-ordered supervision extending for a period of months or years. If the county believes this policy is unfair, it should complain to the Legislature, not the courts. (See
 
 Williams
 
 v.
 
 County of San Joaquin
 
 (1990) 225 Cal.App.3d 1326, 1334 [275 Cal.Rptr. 302];
 
 Neighbours
 
 v.
 
 Buzz Oates Enterprises
 
 (1990) 217 Cal.App.3d 325, 334 [265 Cal.Rptr. 788].)
 

 
 *759
 
 Disposition
 

 The judgment is affirmed.
 

 Sims, Acting P. J., and Nicholson, J., concurred.
 

 [1]
 

 The exceptions are set forth in sections 13967 and 13967.5 of the Government Code (mandatory restitution fine is deposited in the Restitution Fund of the State Treasury), and sections 1202.4 (restitution fine is deposited in Restitution Fund), 1203.04 (restitution is payable to victim, family or Restitution Fund if the crime does not involve a victim), 1463.16 ($50 of certain fines is earmarked for county alcoholism programs), 1463.18, subdivision (a)(1) ($20 of fine for conviction of driving under the influence is transferred to Restitution Fund for indemnification of crime victims, with priority to victims of alcohol-related traffic offenses), and section 1464 (penalty assessment is transmitted to State Penalty Fund). (§ 1203.1, 7th par.)
 

 [2]
 

 The matter was filed in Sacramento County pursuant to Code of Civil Procedure section 394, subdivision (1), which provides in pertinent part that where a city brings an action against a county, the action “may be tried in any county . . . not a party thereto and in which the city ... is not situated.”
 

 [3]
 

 In a procedural challenge, the county contends “the cities lacked the authority to attack or revise the orders of probation [ric] issued by the municipal or justice courts to effectuate a statutory entitlement to fine money at issue.” This claim misconstrues the action. The cities’ attack is directed not at the conditional sentences but at the county’s decision not to share the funds collected under those orders.
 

 [4]
 

 Section 1463 states in pertinent part:
 

 “Except as otherwise specifically provided by law:
 

 “(a) All fines and forfeitures including Vehicle Code fines and forfeitures collected upon conviction or upon the forfeiture of bail ... in any municipal or justice court, shall ... be deposited with the county treasurer of the county in which the court is situated. The moneys so deposited shall be distributed as follows:
 

 “(1) Once a month there shall be transferred into the proper funds of the county an amount equal to the fines and forfeitures collected during the preceding month. . . following arrests made by officers . . . employed by the state or by the county . . . , exclusive of fines or forfeitures or forfeitures of bail collected from any person arrested by a state officer and charged with the commission of a misdemeanor under the Vehicle Code within the limits of a city within the county.
 

 “(2) Except as otherwise provided in this subdivision, once a month there shall be transferred into the traffic safety fund of each city in the county an amount equal to 50 percent of all fines and forfeitures collected during the preceding month upon the conviction or upon the forfeiture of bail from any person arrested by a state officer and charged with the commission of a misdemeanor under the Vehicle Code within that city, and an amount equal to the remaining 50 percent shall be transferred into the special road fund of the county. . . . H] Once a month there shall be transferred into the general fund of the county an amount equal to that percentage of the fines and forfeitures collected during the preceding month upon the conviction or upon the forfeiture of bail from any person arrested by a state officer
 
 *754
 
 and charged with the commission of a misdemeanor under the Vehicle Code on state highways constructed as freeways whereon city police officers enforced the provisions of the Vehicle Code on April 1, 1965, within the limits of a city within the county which is set forth in the schedule appearing in paragraph (3). . . .
 

 “(3) Once a month there shall be transferred into the general fund of the county an amount equal to that percentage of the fines and forfeitures collected during the preceding month upon conviction or upon the forfeiture of bail following arrests made by officers or other persons employed by each city in the county which is set forth in the following schedule:
 

 “[The schedule specifies percentages for each county and its cities.]
 

 “In any county for which a county percentage is set forth in the above schedule and which contains a city which is not listed or which is hereafter created, there shall be transferred to the county general fund the county percentage. In any county for which no county percentage is set forth, and in which a city is hereafter created, there shall be transferred to the county general fund 15 percent. H] A county and a city may, by mutual agreement, adjust the percentages herein.
 

 “(4) Once a month there shall be transferred to each city in the county an amount equal to the total sum remaining after the transfers provided for in paragraphs (2) and (3) have been made of the fines and forfeitures collected during the preceding month upon conviction or upon the forfeiture of bail following arrests made by officers or other persons employed by that city or arrests made by state officers for misdemeanor violations of the Vehicle Code.”
 

 [5]
 

 Accordingly, we need not address the parties’ and amici curiae’s dispute over the significance of the fact that the fines are monitored and collected by clerical employees of the probation department rather than by probation officers.