[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISSCOUNT ONE OF THE INFORMATION
In this criminal matter, defendant stands accused of capital felony murder in violation of General Statutes § 53a-54b(2), murder in violation of §§ 53a-8 and 53a-54a, conspiracy to commit murder in violation of §§ 53a-48 and 53a-54a. Defendant has moved to dismiss count one of the Substitute Information. For reasons hereinafter stated, the motion is denied.
On May 6, 1996, defendant filed a Motion for a Bill of Particulars. Subsequently on June 18, 1996, the State responded to such motion by filing a Substitute Information. The first count of the Substitute Information is as follows:
 The undersigned assistant state's attorney for the State of Connecticut accuses Haiman Long Clein of capital felony murder and charges that at the town of East Lyme, on or about March 10, 1994, the said Haiman Long Clein having, with the intent to cause the death of Anson B. Clinton III, hired Mark J. Despres to commit said murder for pecuniary gain, said Mark J. Despres did, intentionally and for pecuniary gain, cause the death of Anson B. Clinton III by shooting him in violation of Section 53a-54b(2) of the Connecticut General Statutes.
Defendant has moved to dismiss this count, under the provisions of Practice Book § 815, claiming that the Substitute Information fails to allege an essential element of the offense, to wit: that the defendant Haiman Clein hired the alleged killer for his own pecuniary gain." At issue is whether or not the provisions of General Statutes § 53a-54b(2) require, for inclusion within its ambit, that the person hiring another to commit murder do so for the pecuniary gain of the hirer.
Section 53a-54b(2) defines a form of capital felony as:
 (2) Murder committed by a defendant who is hired to commit the same for pecuniary gain or murder committed by one who is hired by the defendant to commit the same for pecuniary gain. (Emphasis added.)
CT Page 9683
The statute is drawn to cover two types of criminal activity. There is no doubt that the first part of the statute covers the "hired assassin," that is one who is hired to kill for the pecuniary gain of the killer. State v. McGann, 199 Conn. 163,174-178 (1986). Defendant is charged under the second part of the statute emphasized above. Defendant claims that this portion of the statute requires the State to allege and prove not only that he hired the killer, but that he did so for his own personal pecuniary gain. Since the information fails to allege this element, defendant claims it is fatally defective and must be dismissed.
The State argues to the contrary and claims that the phrase "to commit the same for pecuniary gain" refers to the person who is hired and it matters not whether the person hiring does so for his own personal gain.
To resolve this issue, the Court must determine the intent of the legislature as expressed in the statute. There are no judicial interpretations of the statute directly on point.
The intent of the legislature may be found in what the statute says. Daily v. New Britain Machine Co., 200 Conn. 562,571 (1986). To determine the intent of the legislature, we look first to the language of the statute. If that language is plain and unambiguous, we must go further. University of Connecticut v.Freedom of Information Commission, 217 Conn. 322, 328 (1991). If the statute is ambiguous, e.g. either opaque or susceptible to alternative conflicting interpretation, the Court must seek guidance from "extrinsic aids." Sanzone v. Board of PoliceCommissioners, 219 Conn. 179, 187 (1991).
In interpreting § 53a-54b(2), a criminal statute, it must not be read more broadly than the language plainly requires and ambiguities ordinarily must be resolved in favor of defendant. This is especially pertinent to a death penalty statute. State v.McGann, supra, 177; State v. Russell, 218 Conn. 273, 277-278
(1991). Although criminal statutes must be strictly construed, it is equally fundamental that the rule of strict construction does not require an interpretation which frustrates an evident legislative intent. State v. Ellis, 197 Conn. 436, 445 (1985).
Defendant has urged consideration of the rule of lenity. The touchstone of the rule of lenity is statutory ambiguity. The CT Page 9684 rule is applicable in those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history and motivating policies of the statute. State v. Hinton, 227 Conn. 301, 317-318
(1993).
An analysis of § 53a-54b(2) in light of the law above cited cases leads to the conclusion that defendant's interpretation of the statute must be rejected and the motion denied.
The plain wording of the statute discloses the legislative intent and where that language is clear and unambiguous, its meaning is not subject to modification by construction. Leib v.Board of Examiners for Nursing, 177 Conn. 78, 85 (1979). To apply the interpretation urged by defendant would thwart the expressed purpose of the statute and this cannot be done. Frazier v.Manson, 176 Conn. 638, 644 (1979). State v. Ellis, 197 Conn. 436,445 (1985).
The question presented is what word or phrase does the phrase "for pecuniary gain" refer to.
 Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. The last antecedent is the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence. Thus a proviso usually is construed to apply to the provision or clause immediately preceding it. 2A Sutherland Stat. Const. § 47.33 (5th Ed.)
In § 53a-54b(2), the last antecedent preceding the phrase "for pecuniary gain," is the phrase "the same." The words "to commit" preceding "the same" clearly indicating that "the same" refers to the word "murder." Since the murder must be committed by the one who is hired, the clear legislative intent expressed in the statute is that the murderer do so for his or her pecuniary gain. There is nothing to indicate that the phrase "for pecuniary gain" should relate back to the word "defendant."
This "doctrine of the last antecedent" was relied upon by the Rhode Island Supreme Court in explaining a section of that CT Page 9685 state's RICO statute. State v. Brown, 486 A.2d 595, 600 (R.I. 1985). See also Victorville v. County of San Bernadino,285 Cal.Rptr. 206, in which the California court, in finding that a revenue sharing statute was unambiguous, held that it was a general rule of statutory construction that modifying phrases are to be applied to the words immediately preceding them and "are not to be construed as extending to more remote access."
It must then be concluded that the clear wording of that portion of § 53a-54b(2) in question covers a defendant who hires another to commit murder for the pecuniary gain of the person hired. The statute does not require that the defendant hirer derive pecuniary gain from the murder.
Since there is no ambiguity or reasonable doubt, the rule of lenity does not apply.
Although extrinsic aids need not be resorted to for an interpretation of the statute to determine legislative intent the legislative history of the statute as presented by the State and defendant confirms the above conclusion.
The statements of the legislators appended to the briefs do not appear to be directly on point. They all address §53a-54b in general terms. With the possible exception of Senator Bingham, none of the legislators speak about the specific issue presented here. One conclusion which can be drawn from the quoted remarks, however, is that the legislators were attempting to include under the death penalty statute certain heinous murders which were susceptible to deterrence and to exclude from the statute crimes of passion. Using this reasoning, they included under the statute the cold-blooded assassin who kills for money. This reasoning would apply equally to the person who seeks out a killer and induces him to commit murder for money. Neither party would be committing the crime out of passion or impulse. Both would engage in negotiations, have an opportunity for reflection and be susceptible to deterrence.
Defendant also claims that the statute is unconstitutionally vague and is not sufficiently definite so as to enable him to know what conduct he must avoid. State v. McGann, supra, 177.
The law must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. State v. Patrick, 42 Conn. App. 640, 649 (1996). CT Page 9686 Section 53a-54b(2) is however not vague or indefinite and affords a person of ordinary intelligence an opportunity to know what is prohibited.
Accordingly, the motion miss is denied.
Purtill, J.