[No. E030458. Fourth Dist., Div. Two. Feb. 8, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM THOMAS MINOR, SR., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

COUNSEL

Linda Rose Fessler for Defendant and Appellant.

Alan K. Marks, County Counsel, and Matthew J. Marnell, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**WARD, J.**—Defendant and Appellant William Thomas Minor, Sr., appeals a criminal conviction of infractions of the San Bernardino County Code, for accumulation of trash, rubbish and junk on his land, having a "nonpermitted structure" (i.e., using a storage unit as a residence), and maintaining a hog farm on the property without a conditional use permit. The criminal court not only found defendant guilty of these violations and entered orders for him to bring the property into compliance, it also, pursuant to San Bernardino County Code section 33.0112, ordered him to repay the costs of investigating, analyzing, and prosecuting the criminal action, in the amount of $1,014.00.

Defendant appealed to the Appellate Division of the San Bernardino County Superior Court (the Appellate Division). The Appellate Division panel concluded that, because there was no authorizing legislation permitting the county to recover the costs of criminal law enforcement in this instance, that portion of the sentence requiring defendant to pay the costs of the investigation and prosecution was unlawful.

We transferred the case to this court, on our own motion, pursuant to California Rules of Court, rule 62(a) and (b), to secure uniformity of decision and to settle an important question of law.

After a thorough, independent review of the matter, we have reached the same conclusion as the Appellate Division. That is, the structure of the present legislative scheme does not authorize adding the costs of enforcement as a penalty in criminal prosecution of code infractions. Accordingly, although we sympathize with the difficulties faced by code enforcement agencies, we conclude that the portion of the sentence requiring defendant to pay enforcement costs should be stricken. None of defendant's other issues has merit, however, and in all other respects the judgment is affirmed.

### FACTS AND PROCEDURAL HISTORY

Defendant lives in a rural area in San Bernardino County (the County). Hugh Oram, a code enforcement officer of the San Bernardino County Land

Use Services Department (Department), received a tip that defendant was operating an illegal hog farm on the property. Officer Oram inspected the property and found "tons of trash, garbage, junk and wood debris," numerous "unpainted, non-permitted and substandard storage structures and animal pens," and more than 20 hogs on the property. Defendant apparently was occupying a mobilehome and several small travel trailers. Nine inoperative vehicles and "piles of vehicle parts" were present. After several courtesy notices, with no observable improvement, Officer Oram sent defendant a notice of violation, and set the matter for criminal prosecution.

On August 23, 2000, the court found defendant guilty of three infraction offenses for violation of various provisions of the San Bernardino County Code.[1] The court also ordered defendant to "Pay Restitution to the City of [*sic*] Land Use Services Dept. in the amount of $1014.00. . . ."

Defendant appealed to the Appellate Division. The Appellate Division found none of the issues raised by defendant, upon his notice of appeal, to be meritorious, but on its own motion questioned the propriety of the part of the sentence requiring defendant to reimburse the County's code enforcement costs. The court ultimately held that, in the absence of authorizing legislation, the County was not empowered to enact a criminal punishment consisting of the payment of such enforcement costs. The court ordered that portion of the sentence stricken, and certified its opinion for publication.

On our own motion, we ordered the matter transferred to this court, pursuant to Code of Civil Procedure section 911.[2] As we have "similar power to review any matter and make orders and judgments as the appellate division of the superior court would have in the case" (*ibid.*), we consider the issues on appeal independently of the Appellate Division's opinion. Because we consider the entire appeal anew, we address all potentially dispositive matters raised by defendant's appeal below. (See *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 761-762 [98 Cal.Rptr.2d 1, 3 P.3d 286] [discretion of the Court of Appeal to hear a case transferred to it from the appellate division under Code Civ. Proc., § 911 does not include discretion to select and review only an issue or issues not dispositive of the case].) We next review the merits.

[1]San Bernardino County Code sections 33.03 (creation of a public nuisance), 63.089 (nonpermitted and substandard buildings), and 84.105 (land use violation for operating a hog farm without a conditional use permit).

[2]"A court of appeal may order any case on appeal to a superior court in its district transferred to it for hearing and decision as provided by rules of the Judicial Council when the superior court certifies, or the court of appeal determines, that the transfer appears necessary to secure uniformity of decision or to settle important questions of law." (Code Civ. Proc., § 911.)

ANALYSIS

Although we review the matter wholly anew, we find the Appellate Division's opinion persuasive. While we adopt much of its language as our own, we also add material addressing further aspects of the County's arguments. First, we take up the Appellate Division's resolution of defendant's assignments of error. Second, we address the County's claim that it may impose recovery of administrative enforcement costs as a criminal penalty in this case.

†[I. *Asserted Errors, Other Than Sentencing, Are Without Merit*]*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

[II. *The Administrative Costs of Enforcing Code Violations May Not Be Recovered as a Penalty in a Criminal Enforcement Action*

The trial court ordered defendant to pay, as part of the criminal sentence, "restitution" or "administrative costs" of $1,014 to the County. This amount represented 19.5 hours at an hourly rate of $52 for Officer Oram's time investigating the code violations, attempting to remedy them, and preparing the criminal case for trial. The crux of the matter before us is whether the court could legally require defendant to repay the investigation and other law enforcement costs of the prosecution against him.

A. *General Law Rule: Government Must Bear the Costs of Law Enforcement*]

■ As a general rule, "a government entity may not . . . recover the costs of law enforcement absent authorizing legislation. . . . Under the general law, the expense of capture, detention, and prosecution of persons charged with crime is to be borne by the county. [Citations.]" (*County of San Luis Obispo v. Abalone Alliance* (1986) 178 Cal.App.3d 848, 859 [223 Cal.Rptr. 846]; accord, *People ex rel. Dept. of Transportation v. Outdoor Media Group* (1993) 13 Cal.App.4th 1067 [17 Cal.Rptr.2d 19], [fn.] 16.)

†Reporter's Note: Brackets enclosing material (other than parallel citations) denote insertions or additions added by this court. Empty brackets [ ] denote deletions from the appellate division opinion. Footnotes from the appellate division opinion that have been retained are sequentially numbered.

*See footnote, *ante*, page 29.

[1. *The County's Challenges to the Validity of the General Law Rule Are Without Merit*

The County challenges this initial assertion, claiming that the foundations of the stated general law rule are unsound. The County's arguments are unavailing.

The *Abalone Alliance* court cited *Department of Mental Hygiene v. Hawley* (1963) 59 Cal.2d 247, 251 [28 Cal.Rptr. 718, 379 P.2d 22], which in turn referenced *Napa State Hospital v. Yuba County* (1903) 138 Cal. 378 [71 P. 450], as the source of the stated rule.

County counsel first asserts in its brief that "the majority decision of the first cited case, [*Hawley*], made no such statement. The quote to which the [*Abalone Alliance*] decision referred is located in the beginning of the dissent in *Hawley*." This is quite simply false. *Hawley* was unanimous; it was authored by Justice Schauer, and concurred in by Chief Justice Gibson, and Justices Traynor, McComb, Peters, Tobriner, and Peek. There was no dissenting opinion whatever in that case.

County counsel makes the further claim that "the quoted text is actually from *Napa State Hospital v. Yuba County*[, *supra*,] 138 Cal. 378, 381, which appeared in the context of a discussion whether one statute was unconstitutional as being in conflict with the provisions of a constitutional provision in regard to special laws. [¶] The quote from *Yuba County* [*sic; Hawley*] only referred to the 'general law' of who would bear the costs in context of whether the statute might charge the estate or relatives of an inmate. In the *Abolone* [*sic*] *Alliance* decision, the public entity argued that it had such authority pursuant to the state statutes regarding public nuisance. That is not the statutory authorization upon which [the County here] relies. Hence none of this line of cases included a discussion of considerations of specific empowerments of article 11, section 7 of the California Constitution and local ordinances arising from it."

Even so, the County's argument articulates no reason why the general law should not be as stated in the source cases.

*Napa State Hospital* involved a person charged with crime who was adjudged insane, and therefore unable to stand trial, pursuant to Penal Code section 1368 et seq. The criminal trial was suspended; in the meantime, until the person became well enough to resume trial, he was committed to the state hospital. The hospital director sought to recover, from the county in which the prosecution was to be held, the expenses of housing the person at

the state hospital under the court's order. Penal Code section 1373, as existing at that time, provided that " 'The expenses of sending the defendant to the asylum, of keeping him there, and of bringing him back, are in the first instance chargeable to the county in which the indictment was found or information filed, but the county may recover them from the estate of the defendant, if he have any, or from a relative, town, city, or county bound to provide for and maintain him elsewhere.' " (*Napa State Hospital v. Yuba County*, *supra*, 138 Cal. at p. 381.) Yuba County, where the defendant was being tried, argued that the provision of recovery of hospital costs from it, pursuant to Penal Code section 1373, was improper as an unconstitutional "special statute." The California Constitution provides now, as then, that, "(a) All laws of a general nature have uniform operation," and that "(b) A local or special statute is invalid in any case if a general statute can be made applicable." (See now Cal. Const., art. IV, § 16.)

The court held that Penal Code section 1373 was not a "special law" singling out the prosecuting county for differential treatment. As the court noted, "The 'class' of persons embraced in the chapter and section is one which in the nature of things requires laws applicable alone to such a class. Persons charged with crime who are or become insane naturally belong to a class distinct and different from insane persons who are not so charged with crime." (*Napa State Hospital v. Yuba County*, *supra*, 138 Cal. 378, 381.)

Nonetheless, there was no improper "special law": "Under the general law, the expense of capture, detention, and prosecution of persons charged with crime is to be borne by the county. The party, though insane, is still detained under the law to answer for his crime when he shall become sane. If he were not charged with crime, though he were insane, he might not be sent to the asylum. . . . If, however, he is charged with crime, he must be committed to the asylum, if found insane . . . . He is thus committed that he may be held in the custody of the law . . . and his commitment is a part and parcel of the administraton [*sic*] of the criminal law. If he were not insane the defendant would, on a continuance of his case, be sent to jail or released on bail . . . . It is perfectly natural and proper, then, that the expense of his detention in the one place should be borne by the county as it is in the other. . . . The party is held in custody, not because he is insane, but primarily because he is charged with crime. The section [allowing the state hospital to recover the costs from the prosecuting county] then invades no constitutional inhibition against special laws, because it places the expense of the keeping in the asylum or hospital just where it should rest under the general law, and implies no classification, except such as must exist and be recognized in the very nature of things." (*Napa State Hospital v. Yuba County*, *supra*, 138 Cal. 378, 381-382.)

Even though, as the County points out, the *Napa State Hospital* court's pronouncements involved a different context, its reasoning is nonetheless sound, and its result obtains precisely because the "general law" is as stated.

In *Hawley*, the state sought to recover the costs of hospitalizing an insane criminal defendant, not from the prosecuting county, but directly from the estate or designated relatives of the hospitalized defendant. The defendant's father in *Hawley* appealed a judgment in favor of the state, charging him with the cost of his son's care, even though the defendant was (1) accused of crime, (2) suffering from insanity, and therefore not capable of standing trial, and (3) thus required to be committed to the state hospital. Again, the "general law" rule, as first articulated in *Napa State Hospital*,—i.e., that counties must bear the costs of prosecution—clearly applied. The statement of "general law" was logically correct and compelled the result. We see no reason why the "general law" should be different simply because it was first articulated and considered in a different context. Law enforcement is a quintessentially governmental function, and the government commands the requisite revenue to provide such services through the taxing power. It should come as no surprise, therefore, that the costs of law enforcement, carried out by the counties as an arm of the state, should be borne by the counties.

B. *Local Ordinances Purporting to Authorize Recovery of Law Enforcement Costs Conflict with the General Law Rule*

 1. *The Ordinances Here Purport to Authorize Recovery of Law Enforcement Costs*]

Section 81.0205 of the San Bernardino County Code [ ], pertaining to penalties for code violations, states in pertinent part:

"[A]ny person [convicted of violating] any provision of this Title shall be: (1) guilty of an infraction offense and punished by a fine not exceeding one hundred dollars ($100.00) and not less than fifty dollars ($50.00) for a first offense; (2) guilty of an infraction offense and punished by a fine not exceeding two hundred dollars ($200.00) and not less than one hundred dollars ($100.00) for a second offense. The third and any additional offense shall constitute misdemeanors and shall be punishable by fines not exceeding one thousand dollars ($1,000.00) and not less than five hundred dollars ($500.00) or six (6) months in jail, or both. . . . Payment of any fine or service of a jail sentence herein provided shall not relieve a person . . . from the responsibility of correcting the condition, . . . **In addition to the above penalties the Court may order that the guilty party reimburse the**

**County for all of its costs of investigating, analyzing and prosecuting the enforcement action against the guilty party; the Court shall fix the amount of any such reimbursement upon submission of proof of such costs by the County."** [(Boldface added by appellate division.)]

[2. *No Enabling Legislation Authorizes the Recovery of Law Enforcement Costs*

a. *Article XI, Section 7 of the California Constitution Does Not Provide Authorization for the Ordinances*]

 While this ordinance purports to provide the court with the authority to order a defendant to pay [the] County's enforcement costs, the ordinance cannot actually vest the court with such power unless it is the type of valid "authorizing legislation" contemplated by [*County of San Luis Obispo v.*] *Abalone Alliance, supra*[, 178 Cal.App.3d 848].

County Counsel asserts that enactment of the ordinance is authorized by [article] XI, section 7 of the California [C]onstitution, which states:

"A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Thus, we must evaluate whether any general laws exist on the topic of punishment for penal ordinances and, if so, whether [San Bernardino County Code (SBCC) section] 81.0205 conflicts with them.

[i. *Other General Laws Exist on the Subject of Penal Ordinances, Limiting the Penalties Which May Be Imposed for Violation of Local Codes*]

"[Such] [g]eneral laws do exist. California Government Code section 25132 [ ] reads:

"(a) Violation of a county ordinance is a misdemeanor unless by ordinance it is made an infraction. Such a violation may be prosecuted by county authorities in the name of the people of the State of California, or redressed by civil action. (b) Every violation determined to be an infraction is punishable by (1) a fine not exceeding one hundred dollars ($100) for a first violation; (2) a fine not exceeding two hundred dollars ($200) for a second violation of the same ordinance within one year; (3) a fine not exceeding five hundred dollars ($500) for each additional violation of the same ordinance within one year." [¶] In addition, penalties for misdemeanors are set forth in Penal Code section 19, which provides:

"Except in cases where a different punishment is prescribed by any law of this state, every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding six months, or by fine not exceeding one thousand dollars ($1,000), or by both."

Read together, these statutes do the following: First, they create a default classification of misdemeanors for code violations; second, they authorize counties to classify the violations as infractions if they choose to do so; and, finally, they set the respective punishments for both infraction and misdemeanor code violations.

These general laws would control criminal penalties in the absence of other legislation authorizing a local entity to fix additional penalties. Government Code section 36901 explicitly authorizes *cities* to set the penalties for violations of penal ordinances, but [the] County cites no statute conferring such power on counties.[3]

> [ii. *The Constitutional Grant of Legislative Power in the Area of Zoning Is Expressly Subject to General Law, and Cannot Therefore Provide "Authorization" to Contravene General Law*

The County takes issue with this analysis, arguing that it "reveals an erroneous approach in that the County of San Bernardino does not need to cite the state statutory authorization in regard to zoning matters. As stated in [*Scrutton v. County of Sacramento* (1969) 275 Cal.App.2d 412 [79 Cal.Rptr. 872]], the California Constitution, article 11, section 7, grants **full legislative power** in matters of zoning to the counties . . . ." (Boldface in original.) Thus, the County argues, the "proper approach, in order to strike such local zoning regulation, it [*sic*] is the burden of defendant to find conflicting, prohibiting state legislation created pursuant to a superceding [*sic*] statewide interest—not require [the County] to show enabling legislation."

The County is mistaken.

### iii. *Johnson v. Bradley Is Inapplicable*

The County relies principally on *Johnson v. Bradley* (1992) 4 Cal.4th 389 [14 Cal.Rptr.2d 470, 841 P.2d 990] for its assertion that the County's power

---

[3]"While at first blush it may seem unlikely that statutes would not give counties and cities identical powers, 'legislative control is broader over counties, as mere political subdivisions of the state, than it is over cities, and the legislature has inherent power to prescribe county power, duties, and obligations in exercising governmental functions on the state's behalf.' ([45 Cal.Jur.3d (2000) Municipalities, § 205, p. 323].)"

to legislate is fully autonomous, and subject only to preemption by general laws embodying matters of "statewide concern." *Johnson* concerned the authority of *charter cities* over "municipal affairs," pursuant to California Constitution, article XI, section 5. ██ But the "version of 'home rule' afforded to a *charter city* is substantially more expansive" than that granted to charter counties. (*Dibb v. County of San Diego* (1994) 8 Cal.4th 1200, 1207 [36 Cal.Rptr.2d 55, 884 P.2d 1003].) While charter cities are granted broad authority over "municipal affairs," "[t]here is no corresponding grant of authority and autonomy over the 'county affairs' of charter counties. (*Johnson* v. *Bradley*[, *supra*,] 4 Cal.4th 389, 406 . . . ; see also Sato, *'Municipal Affairs' in California* (1972) 60 Cal.L.Rev. 1055, 1115.)" (*Ibid.*)

*Johnson* is therefore inapplicable.

### iv. *The Imposition of Criminal Penalties Is Not a Zoning Ordinance*

██ Next, it is questionable whether the prescription of a criminal penalty is a "zoning" enactment. "The purpose of a zoning law is to regulate the *use* of land. (See 1 Longtin's Cal. Land Use (2d ed. 1987) §§ 3.02-3.03, pp. 234-236.)" (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 750 [29 Cal.Rptr.2d 804, 872 P.2d 143].)

### v. *The Zoning Power Is Subject to General Law*

Even if we were to consider the penalty as part of a zoning law, the criminal sanction provisions nevertheless remain subject to general law.

*Morehart v. County of Santa Barbara, supra,* 7 Cal.4th 725 concerned what was unquestionably a zoning matter—standards for merger of contiguous parcels. The California Supreme Court held that, even though the Legislature " 'has carefully expressed its intent to retain the maximum degree of local control' " over zoning, the local agencies' zoning power is nevertheless circumscribed by general law, " 'specif[ying] certain minimum standards for local zoning regulations.' " (*Id.* at p. 747.)

██ Thus, as already explained, " 'A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws*.' (Cal. Const., art. XI, § 7, italics added.) ' "Local legislation in conflict with general law is void. Conflicts exist if the ordinance duplicates [citations], contradicts [citation], or enters an area fully occupied by general law, either expressly or by legislative implication [citations]." ' " (*Morehart v. County of Santa Barbara, supra,* 7 Cal.4th 725, 747.)

In *Morehart*, the Legislature had enacted certain provisions of the Government Code, which were expressly stated to be "the sole and exclusive authority for local agency initiated merger of contiguous parcels," (Gov. Code, § 66451.10, subd. (b)) and that "parcels may be merged by local agencies only in accordance with the authority and procedures prescribed by [those sections]." (*Ibid.*) The County of Santa Barbara had, however, amended the county's zoning ordinance to require that certain parcels be of a specified minimum lot size before being developed and, further, determined that development permits for such undersized lots be denied unless the lots, if held by the same owner, were merged. This, the Supreme Court held, the local entity could not do. The local zoning ordinance was impliedly preempted by general law contained in the Government Code.

Certain provisions of the Government Code "reflect[ed] a paramount state concern that statewide uniform standards govern the use of compulsory merger as a means of controlling development. That paramount concern impliedly preempt[ed] any merger requirements of local ordinances that fail[ed] to comply with the standards of [Government Code] section 66451.11, and accordingly preempt[ed] the county zoning ordinance provisions" at issue there. (*Morehart v. County of Santa Barbara, supra,* 7 Cal.4th 725, 760.)

### b. *The County's Ordinances Conflict with General Law*

■ As we have already outlined, other statutes of general application limit the amounts of criminal penalties which may be imposed for misdemeanor and infraction violations of local codes. (*Ante*, pp. 37-39.) Nothing indicates that counties are otherwise granted the power to impose additional criminal penalties.]

Government Code [section] 36900, (pertaining to cities) [ ] is virtually identical to Government Code [section] 25132, (pertaining to counties) [ ].

[Both statutes make code violations misdemeanors by default, infractions at the city's option, and fix the maximum criminal penalties for such infractions and misdemeanors. [ ] Immediately following [section 36900, pertaining to cities] is section **36901**, which states:

"The **city** legislative body **may impose fines, penalties, and forfeitures** for violations of ordinances. It may fix the penalty by fine or imprisonment or both. A fine shall not exceed one thousand dollars ($1,000). Imprisonment shall not exceed six months." [Boldface added by appellate division.] [¶] Even if we interpret section 36901 as authorizing **cities** to force criminal

defendants to repay code enforcement costs, (an interpretation which is by no means obvious), no analogous statute exists empowering **counties** to impose "fines, penalties, and forfeitures." If such power had been conferred on cities and counties by Article XI, section 7 of the Constitution, there would have been no need for the legislature to have enacted section 36901 pertaining to cities.

■ "We do not presume that the Legislature performs idle acts, nor do we construe statutory provisions so as to render them superfluous." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 17 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016].) ■ Thus, if we assume, as we must, that the Legislature had reason to enact the foregoing statutes, we must conclude that counties—unlike cities—do not presently have the power to "fix" fines, penalties and forfeitures for criminal violation of their ordinances, but are relegated to the fines and penalties set by general statutes, except where the Legislature has expressly bestowed on the counties the power to impose additional penalties.

An example of such an express grant of power is contained in Penal Code section 594, subdivision (c)(2), pertaining to graffiti prosecutions. It empowers "any city, county, or city and county" to enact an ordinance stating "that upon conviction of any person pursuant to this section for acts of vandalism, the court may, in addition to any punishment imposed under subdivision (b), . . . order the defendant to pay all or part of the costs not to exceed two hundred fifty dollars ($250) incurred by a law enforcement agency in identifying and apprehending the defendant." Again, if the Constitution already empowered cities and counties to enact legislation compelling such reimbursement, statutes such as this would be superfluous.

■ Counties do have authority to "make any violation of any ordinance enacted by the local agency subject to an **administrative** fine or penalty." (Gov. Code, § 53069.4[4] [(Boldface added by appellate division.)].) However, the language of section 53069.4 does not authorize enactment of an ordinance adding "administrative fines and penalties" to a criminal sentence, but, rather, authorizes a local agency to set up an entire administrative structure whereby administrative fines and penalties may be assessed, and processes whereby imposition of such fines and penalties may be challenged. [The] County admits that it has chosen not to avail itself of the remedies available under administrative code enforcement procedures created pursuant to section 53069.4.

---

[4]We note that [section] 53069.4, [subdivision] (a)(1) limits recoverable administrative fines and penalties for violations that "would otherwise be an infraction" to the maximum infraction fines or penalties specified in [section] 25132 (counties) or [section] 36900 (cities). [ ]

██ [The] County contends that it did not need to set up such an administrative procedure, because its current procedure of collecting administrative costs through a criminal proceeding is within its power. Moreover, [the] County contends that any prohibition on this power would run afoul of Government Code section 65802, which [¶] [ ] [¶] . . . explicitly empowers counties to enact and administer zoning laws[. I]t does not, by its terms, [however,] confer the power to enforce. Enforcement of ordinances is explicitly governed by Government Code section 25132, and [the] County fails to provide us with any support for [its] contention that section 25132 does not govern enforcement of county penal ordinances.

Finally, [the] County simply says that it **must** be permitted to recover prosecution and enforcement costs through criminal sentences because it has no administrative procedure (as authorized by Government Code section 53069.4); the procedures for abatement of nuisances, outlined in SBCC Title 3, Chapter 3: Public Nuisance Abatement, [fn. omitted] are cumbersome; the county is large; and enforcement is complicated. To illustrate its difficulties, [the] County points out that in an abatement procedure, [the] County must "first use its own monetary resources to execute the abatement," must then place a tax lien on the subject property and suffer "the burden of recovering through the hope that the tax bill is paid, or that the property is worth as much as the costs of abatement."

[ ] We are not unsympathetic to [the] County's concerns about the financial burden inherent in implementing its code enforcement programs, but we are required to interpret and apply the law as it now exists [ ] [W]e do not find [l]egislative authority for [the] County's current practice. [ ]" [(Boldface in original.)]

While there certainly may be reasons to consider the legislative policy, as it now stands, unfair in its application in this instance, we must reluctantly conclude that the County's remedy lies with the Legislature, and not with the courts. (Cf. *City of Victorville v. County of San Bernardino* (1991) 233 Cal.App.3d 1312, 1322 [285 Cal.Rptr. 206] [rejecting the County's assertion that it should not be forced to share with cities the moneys received from fines imposed as a condition of informal probation].)

III. *Other Sentencing Error Requires Remand*]

██ In addition, the case must be remanded for resentencing because the record shows that the court did not impose the sentence required by law. A court may neither impose a sentence that is not authorized by statute (*People v. Chambers* (1998) 65 Cal.App.4th 819, 76 [76 Cal.Rptr.2d 732]) nor fail to

impose a penalty that is legislatively prescribed. (*In re Sandel* (1966) 64 Cal.2d 412, 415 [50 Cal.Rptr. 462, 412 P.2d 806].) [Defendant] was convicted of three infractions. As discussed above, Government Code section 36900 specifies fines for infraction violations on a scale that rises with each successive violation of the same ordinance. (Gov. Code, § 36900.) The court imposed no fines pursuant to this statute. Failure to do so was error.

[End of adopted opinion.]

### DISPOSITION

The judgment of conviction is affirmed. The sentence is vacated and the case remanded for resentencing.

McKinster, Acting P. J., and Richli, J., concurred.