Filed 6/12/13  In re L.L. CA2/2
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re L. L., a Person Coming Under the Juvenile Court Law. | B226214 <br> S196866 <br> (Los Angeles County <br> Super. Ct. No. MJ14339) |
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> L. L., <br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Robin R. Kesler, Juvenile Court Referee.  Vacated and remanded.

Mary Bernstein, under appointment by the Supreme Court of California, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

On August 23, 2011, this court vacated an order by the juvenile court committing L. L. (appellant) to the Division of Juvenile Facilities (DJF).[1] The Attorney General filed a petition for review with the Supreme Court of California challenging this court's opinion. The Supreme Court granted the petition and deferred the matter pending *In re Greg F.*, S191868, which was under consideration at the time.

The Supreme Court has now transferred the matter back to this court for reconsideration in light its decision in *In re Greg F.* (2012) 55 Cal.4th 393 (*Greg F.*). We requested additional briefing from the parties. Having reconsidered the matter, this court concludes that no change is required of our August 23, 2011 disposition. Accordingly, the juvenile court's order committing appellant to DJF is once again vacated and the matter is remanded to the juvenile court for proper disposition.

## BACKGROUND[2]

In August 2006, appellant admitted that he committed assault with a deadly weapon (Pen. Code, §245, subd. (a)(1)) on or about April 5, 2006, and second degree commercial burglary (Pen. Code, § 459) on or about July 17, 2006. The juvenile court declared appellant a ward of the court under Welfare and Institutions Code section 602,[3] placed him home on probation, and set the maximum confinement period at five years eight months.

---

[1]  "Effective July 1, 2005, the correctional agency formerly known as the California Youth Authority (CYA) became known as the Division of Juvenile Facilities (DJF). DJF is part of the Division of Juvenile Justice, which in turn is part of the Department of Corrections and Rehabilitation. (Welf. & Inst. Code, § 1710, subd. (a); Pen. Code, § 6001; Gov. Code, §§ 12838, subd. (a), 12838.3, 12838.5, 12838.13.)" (*In re Jose T.* (2010) 191 Cal.App.4th 1142, 1145, fn. 1.)

[2]  The following background comes from this court's August 23, 2011 decision (B226214 [nonpub. opn.].)

[3]  All subsequent unspecified statutory references are to the Welfare and Institutions Code.

2

In November 2006, appellant admitted that he committed second degree robbery (Pen. Code, § 211) on or about October 14, 2006. The juvenile court ordered appellant to remain on home probation and set the maximum confinement period at six years eight months.

In December 2006, appellant admitted that he committed second degree robbery (Pen. Code, § 211) on or about September 23, 2006. The juvenile court ordered three months of short-term camp community placement and set the maximum confinement period at seven years eight months.

On October 22, 2007, the Los Angeles County District Attorney (district attorney) alleged in a section 602 petition that, on or about August 20, 2007, appellant: threatened a witness (count 1; Pen. Code, § 140, subd. (a)), and committed simple battery (count 2; Pen. Code, §§ 242, 243, subd. (a)).

Approximately a month later, on November 26, 2007, the district attorney alleged in a section 602 petition that, on or between August 1, 2005 and June 1, 2006, appellant: committed lewd acts upon a child (counts 1, 2 & 3; Pen. Code, § 288, subd. (a)), committed oral copulation by threat of future retaliation (count 4; Pen. Code, § 288a, subd. (d)(2)), sodomized a person under 14 years of age (count 5; Pen. Code, § 286, subd. (c)(1)), and dissuaded a witness from reporting a crime (count 6; Pen. Code, § 136.1, subd. (b)(1)).

On December 21, 2007, the juvenile court approved a negotiated plea agreement under which appellant admitted count 1 (threatening a witness) of the October 2007 petition, and counts 1 and 2 (committing lewd acts upon a child) of the November 2007 petition. As part of this agreement, the juvenile court ordered nine months of long-term camp community placement, dismissed the remaining counts on both petitions, and set the maximum term of physical confinement at 14 years eight months.[4]

---

[4] A more detailed discussion of what transpired at the December 21, 2007 hearing is contained in "Discussion, Section III" of this decision.

In August 2008, appellant returned before the juvenile court based on allegations of probation violations contained in a section 777 petition.[5]  The petition alleged that appellant had:  pushed another minor, broken into a camp refrigerator to remove snacks and cookies, responded to a probation officer with profanity, made noises at bedtime by shouting profanity, and displayed defiance toward probation staff.  In November 2008, at the hearing on the alleged probation violations, appellant admitted only to the allegation that he had broken into a camp refrigerator to remove snacks and cookies.  The juvenile court stated that camp placement had failed to rehabilitate appellant, and that commitment to DJF would serve the best interests of appellant and the public by providing appellant with sexual offender counseling and "some element of punishment."

Appellant appealed the juvenile court's order committing him to DJF.  Appellant argued that the most recent offense to which he admitted was the offense of threatening a witness, which was neither an offense described in section 707, subdivision (b) (section 707(b)), nor a sex offense as set forth in Penal Code section 290.008, subdivision (c), as required by section 733, subdivision (c) (section 733(c)).  The People agreed with appellant's argument on appeal.  We agreed, as well, stating in our April 12, 2010 decision that:  "'The language of section 733(c) allows commitment to DJF only when "*the most recent offense* alleged in any petition and admitted or found to be true by the court" (italics added) is an eligible offense.  The statute does not focus on the overall or entire delinquent history of the minor or on whether the minor may be generally considered a serious, violent offender.  The language looks to the minor's "most recent offense."'  (*V.C. v. Superior Court* (2009) 173 Cal.App.4th 1455, 1468.)"  We vacated the juvenile court's commitment order and remanded for proper disposition.

At the July 9, 2010 remand hearing, the juvenile court concluded that releasing appellant from DJF would hinder his rehabilitation and endanger the general public.

---

[5]     Section 777 provides authority for a probation officer and/or the People to seek an order changing or modifying a previous placement order if a violation of a condition of probation occurs.

Invoking section 782,[6] the juvenile court dismissed the October 2007 petition alleging the offense of threatening a witness, and withdrew appellant's admission to that offense. The juvenile court then found that appellant was eligible for DJF commitment based on his admission to the earlier offense of committing lewd acts upon a child. Appellant once again appealed the juvenile court's commitment order.

In a decision dated August 23, 2011, this court, relying in large part on the Third District Court of Appeal's decision in *V.C. v. Superior Court*, *supra*, 173 Cal.App.4th 1455, 1468 (*V.C.*), held that the juvenile court's dismissal of the petition alleging the offense of threatening a witness was an abuse of discretion because it contravened both the plain language and legislative history of section 733(c).

As noted above, the Attorney General filed a petition for review of this court's decision before the Supreme Court. The Supreme Court granted the petition for review and deferred the matter. The Supreme Court has now transferred the matter back to this court for reconsideration in light of its decision in *Greg F.*, *supra*, 55 Cal.4th 393.

## ANALYSIS

### I. Statutory Framework

Where, as here, "a minor is adjudged a ward of the court on the ground that he or she is a person described by Section 602, the court may . . . [c]ommit the ward to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities, if the ward has committed an offense described in subdivision (b) of Section 707 or subdivision (c) of Section 290.008 of the Penal Code, and is not otherwise ineligible for commitment to the division under Section 733." (§ 731, subd. (a)(4).)

Section 733(c) sets forth three categories of juvenile wards who are ineligible for commitment to DJF. As relevant here, the statute provides: "A ward of the juvenile

---

[6] Section 782 provides: "A judge of the juvenile court in which a petition was filed, at any time before the minor reaches the age of 21 years, may dismiss the petition or may set aside the findings and dismiss the petition if the court finds that the interests of justice and the welfare of the minor require such dismissal, or if it finds that the minor is not in need of treatment or rehabilitation."

court who meets any condition described below shall not be committed to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities:  [¶] . . . [¶]  (c) The ward has been or is adjudged a ward of the court pursuant to Section 602, and the most recent offense alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707 or subdivision (c) of Section 290.008 of the Penal Code."  (§ 733(c).)

## II.     *In re Greg F*. (2012) 55 Cal.4th 393

In *Greg F*., *supra*, 55 Cal.4th 393, the minor (Greg) struck a child in the head with a baseball bat after the child refused to turn over his bicycle.  (*Id*. at p. 400.)  Just before the assault, Greg yelled gang slogans and displayed gang hand signs.  The district attorney filed a delinquency petition (the "first delinquency petition"), alleging that Greg had committed assault with a deadly weapon and by means of force likely to produce great bodily injury, had personally inflicted great bodily injury, and had acted for the benefit of a criminal street gang.  Greg admitted each of the allegations and the juvenile court sustained the petition.  Because the offense of "assault by any means of force likely to produce great bodily injury" is one of the offenses listed in section 707(b), Greg was eligible for a DJF commitment.  (*Greg F*., at p. 401.)  Indeed, the probation department unanimously recommended commitment to DJF based on the severity of the crime, the lack of remorse exhibited by Greg, and the risk that Greg posed to the community if placed on probation.  (*Ibid*.)

The juvenile court, however, opted not to commit Greg to DJF and instead ordered an out-of-home placement.  Five months later, after refusing to participate in the course of treatment offered at the out-of-home placement site, Greg was transferred to juvenile hall.  Two months into his juvenile hall placement, Greg, along with two fellow gang members, physically attacked three individuals who belonged to a rival gang.  (*Greg F*., *supra*, 55 Cal.4th. at p. 401.)

The district attorney filed a second delinquency petition alleging that Greg had committed battery for the benefit of a gang (Pen. Code, §§ 186.22, subd. (d), 242), and knowingly participated in a gang (Pen. Code, § 186.22, subd. (a)).  At the detention

6

hearing the next morning, Greg admitted the battery offense, which was not a DJF-eligible offense. The juvenile court accepted Greg's admission and set the matter for a dispositional hearing. (*Greg F.*, *supra*, 55 Cal.4th at p. 401.) Three days later, the district attorney filed an ex parte request to calendar a motion to "withdraw" Greg's plea to the battery offense, and subsequently filed a notice of probation violation under section 777. The district attorney explained that he had filed the second delinquency petition in error, and requested that the juvenile court withdraw Greg's plea to the battery offense and dismiss the petition. The district attorney explained that he was "'trying to get to a [DJF-eligible] offense.'" (*Greg F.*, *supra*, 55 Cal.4th at p. 402.)

Invoking section 782, the juvenile court dismissed the second delinquency petition and set aside Greg's admission to the battery offense. The juvenile court explained that it had dismissed the second petition "to create the 'best options' for disposition." (*Greg F.*, *supra*, 55 Cal.4th at p. 402.) Greg subsequently admitted the section 777 probation violation and the juvenile court committed Greg to DJF based on his earlier admission to the offense of assault by means of force likely to produce great bodily injury. (*Greg F.*, at p. 402.)

The Court of Appeal reversed the juvenile court's order withdrawing Greg's admission to the battery offense and dismissing the second delinquency petition. It held that section 733(c) limits a juvenile court's authority to dismiss a current delinquency petition under section 782 in order to render a minor eligible for DJF commitment based on an earlier sustained delinquency petition. (*Greg F.*, *supra*, 55 Cal.4th at p. 402.)

The Supreme Court reversed the Court of Appeal. The Court reasoned as follows: After Greg attacked the three individuals in juvenile hall, the district attorney could have filed a section 777 petition alleging that Greg had violated probation by committing battery. Had the district attorney done so, and had the allegation been found true, Greg could have been committed to DJF for up to 17 years as punishment for the earlier assault offense. (*Greg F.*, *supra*, 55 Cal.4th at p. 405.) The district attorney, however, mistakenly brought Greg's battery offense in front of the juvenile court by way of a second delinquency petition. Once Greg admitted to the battery allegation, Greg became

7

ineligible for DJF commitment. Thus, the Court pointed out, Greg's ineligibility for DJF commitment arose "because the prosecution ha[d] simply filed the wrong piece of paper: a 602 petition instead of a 777 notice." (*Id.* at p. 411.) In other words, "[t]wo minors on probation for the same DJF-eligible offense who later committed the same non-section-707(b) conduct would be subject to very different dispositions depending on which form of pleading was filed." (*Ibid.*) The Court noted that "[a]lthough not to be encouraged, occasional oversights such as [filing the wrong piece of paper] understandably occur given the unusually short deadlines in juvenile delinquency matters." (*Ibid.*)

The Court concluded that such a scenario was "absurd" and unfairly "immunize[d] from DJF commitment a minor who quickly admits new misconduct alleged in a 602 petition even if the minor remained eligible for DJF under the terms of probation on a prior offense." (*Greg F.*, *supra*, 55 Cal.4th at p. 411.) According to the Court, "[t]o interpret section 733(c) as cutting off the juvenile court's broad discretion to order an appropriate disposition, simply because the wrong document was filed, would elevate form over substance and create an absurd result the Legislature could not have intended." (*Id.* at pp. 411-412.) Thus the Court held, "When a DJF commitment for a section 707(b) offense for which probation was ordered serves the interest of justice and the welfare of the minor, the juvenile court has discretion to dismiss a new 602 petition to permit treatment of the matter as a probation violation." (*Id.* at p. 412.)

In issuing its holding, the Court was careful to distinguish the facts of *Greg F.* with the facts of *V.C.*, *supra*, 173 Cal.App.4th 1455, the case that we relied on in our August 13, 2011 opinion. [7] The Court noted that, unlike the minor in *Greg F.*, the minor

---

[7]     In *V.C.*, *supra*, 173 Cal.App.4th 1455, the district attorney alleged in a section 602 delinquency petition that the minor (V.C.) had committed a lewd and lascivious act upon a child (Pen. Code, § 288, subd. (a)). V.C. admitted to the reasonably related offense of oral copulation of another minor (Pen. Code, § 288a). Although that offense rendered V.C. eligible for DJF commitment, the juvenile court placed V.C. in a "'suitable Level "A" placement'" with participation in sexual offender counseling as a condition of probation. Two years later, the district attorney filed a second delinquency petition alleging V.C. committed three new criminal offenses: a lewd and lascivious act upon a

8

in *V.C.* had admitted to a non-DJF-eligible misdemeanor as part of a "*negotiated plea bargain*," and had "*already entered* the placement that the court ordered." (*Greg F.*, *supra*, 55 Cal.4th at pp. 414-415.) The plea agreement was thus a "'*fully executed agreement*,'"(italics added by *Greg F.*) and the minor in *V.C.* had a "constitutional right to the benefit of his completed plea bargain." (*Greg F.*, at p. 415, citing *V.C.*, at p. 1467.) Given this constitutional right, the Court stated: "Dismissing a 602 petition *after* disposition potentially raises a host of constitutional concerns not presented in the case before us. We express no opinion on whether such a dismissal could ever be appropriate." (*Greg F.*, at p. 415.) The Supreme Court did, however, disapprove of the portion of *V.C.* in which the *V.C.* court held that "section 733(c) must always override the juvenile court's ability to dismiss a delinquency petition under section 782." (*Greg F.*, at p. 415, citing *V.C.*, at pp. 1467-1469.)

## III.   Application of *Greg F.* to the Present Case

### A.   *The December 21, 2007 Hearing*

Before we turn to how *Greg F.* applies to the present case, we provide a more detailed discussion of what took place at the December 21, 2007 hearing when appellant

---

child (Pen. Code, § 288, subd. (a)); misdemeanor indecent exposure (Pen. Code, § 314, subd. 1); and misdemeanor child molestation (Pen. Code, § 647.6, subd. (a)(1)). The juvenile court approved a negotiated plea bargain under which V.C. admitted the charge of misdemeanor indecent exposure. The court continued V.C. as a ward of the court and again ordered a "'suitable Level "A" placement'" with participation in a sexual offender treatment program as a condition of probation. (173 Cal.App.4th at pp. 1459-1460.)

Approximately four months later, the district attorney filed a section 777 probation violation petition when V.C. refused to participate in the treatment program and sought DJF commitment. Because V.C.'s admission to the misdemeanor indecent exposure rendered him ineligible for DJF commitment, the district attorney moved to dismiss the second delinquency petition alleging that offense. The superior court concluded that commitment to DJF was beneficial for both the minor and the general public. It withdrew the minor's admission to the misdemeanor indecent exposure offense, and dismissed the second delinquency petition pursuant to section 782 for the express purpose of rendering V.C. eligible for DJF commitment based on his earlier admission to oral copulation of another minor. (*V.C.*, *supra*, 173 Cal.App.4th at p. 1461.) The Court of Appeal concluded the juvenile court had abused its discretion. (*Id.* at p. 1468.)

9

admitted to the offenses of threatening a witness and committing lewd acts upon a child. The colloquy between the juvenile court, the prosecution, and appellant that took place at this hearing is of significance.

At that hearing, the juvenile court commenced proceedings by announcing: "I understand that he's going to admit two counts of 288(a)." (The court was referring to the two counts of committing lewd acts upon a child (Pen. Code, § 288, subd. (a)) that occurred, on or between August 1, 2005, and June 1, 2006, as alleged in the November 26, 2007 delinquency petition.) Counsel for appellant acknowledged that appellant intended to admit these counts, and added that appellant also planned on admitting count 1 of the October 22, 2007 petition. (Counsel was referring to the count of threatening a witness (Pen. Code, § 140, subd. (a)) alleged to have occurred on or about August 27, 2007.) The juvenile court responded: "And that's your understanding he's going to do a nine-month camp?" Counsel for appellant answered: "Yes."

The juvenile court directed the prosecutor to take appellant's waivers. The prosecutor went over the charges that appellant intended to admit (one count of threatening a witness and two counts of lewd acts upon a child), conducted a *Gladys R.*[8] inquiry, and then reviewed appellant's constitutional rights to an adjudication, to confront and cross-examine adverse witnesses, and the right against self-incrimination. Appellant stated that he understood these rights and waived all of them.

The prosecutor then informed appellant of the consequences of violating probation. The following colloquy is particularly salient:

"[Prosecutor]: [I]f you're found in violation of your terms and conditions of probation, the court has some options available to it. You could be sent—you could be sent to juvenile hall, you could be sent back to camp, you could go to suitable placement. Mr. [L.], I believe I'm pretty sure that you are actually eligible now, based on your prior

---

[8]   *In re Gladys R*. (1970) 1 Cal.3d 855, 862, provides: "[I]n order to become a ward of the court . . . clear proof must show that a child under the age of 14 years at the time of committing the act appreciated its wrongfulness."

petitions, if you are found in violation of your terms and conditions of your probation you could go to CYA.

"The Court: Although he cannot because none of these current offenses are 707(b) offenses.

"[Prosecutor]: But he's still on probation for a 211.

"The Court: Does not matter. The new offense has to be a 707(b) offense.

"[Prosecutor]: Okay. All right. So I take that back about CYA, but everything else there applies. Do you understand the consequences of a probation violation . . . ?

. . . .

"[Appellant]: Yes, sir."

After a short break in the proceedings, the prosecutor asked appellant: "Keeping everything in mind we've gone through [, appellant,] do you still wish to admit the charges?" Appellant responded: "Yes." Appellant then admitted to count 1 of the October 2007 petition, and counts 1 and 2 of the November 2007 petition. The juvenile court accepted appellant's admission, and noted that appellant understood the "possible consequences" of his admission. The juvenile court declared appellant a ward of the court, sustained the counts that he admitted, and dismissed in the interests of justice the remaining counts alleged in the October and November 2007 petitions. The juvenile court moved directly to disposition. It placed appellant under the care, custody, and control of the probation department, ordered nine months of long-term camp placement, and set the maximum term of physical confinement at 14 years eight months.

### B. Greg F. *Is Distinguishable*

In our view *Greg F.* is distinguishable from the present case for several reasons:

First, unlike in *Greg F.* where the minor was rendered ineligible for DJF commitment because the prosecution "simply filed the wrong piece of paper" (55 Cal.4th at p. 411), appellant in this case was rendered ineligible for DJF commitment because the prosecution agreed to a plea bargain in which appellant would admit to a nonqualifying DJF offense in exchange for a nine-month camp placement. It appears that at the time the district attorney filed the October 2007 delinquency petition (alleging the

11

nonqualifying offense), appellant was still on probation for an earlier offense of robbery (a DJF-qualifying offense). Thus, the prosecution could have filed a section 777 probation violation petition, which would have rendered appellant eligible for DJF commitment. Yet, the prosecution filed a delinquency petition instead, and at no point shortly after filing this petition did the prosecution state that it had made a mistake by filing a delinquency petition instead of a probation violation petition. (Compare *Greg F.*, at p. 415 ["Just three days after the minor admitted an offense that was not DJF eligible, the prosecution moved to set aside the plea and dismiss the 602 petition."] The "absurd" scenario of "elevat[ing] form over substance" found in the circumstances of *Greg F.* is not present here. (*Greg F.*, *supra*, 55 Cal.4th at p. 412.)

Second, unlike in *Greg F.* where there appeared to be no agreement as to the nature of punishment the minor would receive for admitting the battery offense, appellant admitted to the offenses of threatening a witness and committing lewd acts upon a child as part of a negotiated plea bargain in which he would receive nine months of camp placement, and *not* a DJF commitment. In fact, the juvenile court stated twice during the December 21, 2007 hearing that appellant would *not* be eligible for DJF commitment even if he violated probation and the prosecution agreed with the court's statements. Appellant's plea agreement was a "'*fully executed agreement*,'" and appellant had a "constitutional right to the benefit of his completed plea bargain." (*Greg F.*, *supra*, 55 Cal.4th at p. 415; see also *People v. Segura* (2008) 44 Cal.4th 921, 931 ["'"A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound." [Citation.] Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly.'"].)

Third, unlike in *Greg F.* where "no disposition on the petition had been entered, or even much discussed" (55 Cal.4th at p. 415), the juvenile court dismissed the later delinquency petition in order to render appellant eligible for DJF commitment disposition several months *after* disposition. As noted by the Supreme Court in *Greg F.*, "[d]ismissing a 602 petition *after* disposition potentially raises a host of constitutional concerns." (*Ibid*.)

In her letter brief to the court, the Attorney General argues that the circumstances of this case do not raise the "constitutional concerns" articulated in *Greg F.* because "the material terms of appellant's plea had already been agreed upon before the start of the December 2007 hearing," and "there is no showing that appellant relied on the colloquy about the consequences of a probation violation in deciding how to comport his behavior." In our view, this argument is based on conjecture. All one can be sure of from the record is that the appellant had *tentatively* agreed to admit to one count of threatening a witness and two counts of lewd acts upon a child in exchange for a nine-month camp placement, and *actually* admitted to those counts only after being told by the juvenile court, with the prosecution in agreement, that he would not be committed to DJF if he violated probation. The record leaves no room for further guessing as to what appellant would have agreed to had no such colloquy taken place.

In sum, we have reconsidered the matter and conclude, for the reasons cited above, that the Supreme Court's decision in *Greg F.*, *supra*, 55 Cal.4th 393, is distinguishable and does not compel us to alter the disposition ordered in our August 23, 2011 opinion.

## DISPOSITION

The juvenile court's order committing appellant to DJF is vacated and the matter is remanded for proper disposition.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

13