Filed 9/3/13  In re Omar C. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re OMAR C., a Person Coming Under the Juvenile Court Law. | B243843 |
| THE PEOPLE et al., | (Los Angeles County Super. Ct. No. JJ19612) |
| Plaintiffs and Respondents, | |
| v. | |
| OMAR C., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Donna Quigley Groman, Judge.  Reversed and remanded.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Omar C. was a dependent of the juvenile court when he was charged with two separate felonies. As part of a plea agreement, Omar admitted to the felonies in exchange for deferred entry of judgment which would put him in the care of the Los Angeles County Department of Children and Family Services (DCFS). The plea agreement was approved by a referee sitting as a temporary judge. Subsequently, a judge of the juvenile court ordered a rehearing of the referee's orders and placed Omar into the custody of the probation department instead. Because the referee's orders were not subject to rehearing, we reverse and remand to reinstate the referee's dispositional orders.

### FACTUAL AND PROCEDURAL HISTORY

Omar was charged with possession of metal knuckles in violation of Penal Code section 21810 in an April 11, 2012 petition filed under Welfare and Institutions Code section 602.[1] At the time of the petition, Omar was 16 years old. He had been a dependent of the juvenile court pursuant to section 300 since 2006 as a result of physical abuse by his father and substance abuse by both parents. Because the juvenile court could potentially have dual jurisdiction over Omar as a dependent of the court and a ward of the court, section 241.1[2] was triggered to allow the court to determine his status.

Another section 602 petition was filed on July 17, 2012, against Omar for one count of grand theft auto (Pen. Code, § 487(d)(1)) when he tried to take a van from his group home without consent. Omar stated that he tried to take the van because he was tired of the group home and wanted to leave. However, he asked for another chance and pointed out that he was doing well in school and was not taking any drugs or alcohol.

---

[1]     All further section references are to the Welfare and Institutions Code unless otherwise specified.

[2]     Section 241.1(a) provides: "Whenever a minor appears to come within the description of both Section 300 and Section 601 or 602, the county probation department and the child welfare services department shall, pursuant to a jointly developed written protocol described in subdivision (b), initially determine which status will serve the best interests of the minor and the protection of society. The recommendations of both departments shall be presented to the juvenile court with the petition that is filed on behalf of the minor, and the court shall determine which status is appropriate for the minor."

The probation department recommended that Omar's case be handled by a section 241.1 unit. It stated that direct release would not be considered because Omar was a habitual runaway, who had "awol'd from placement six times" in the last four months of placement. The probation department recommended secure detention for the safety of the community because Omar had escalated into delinquent activity. Omar denied the allegations in the July 17 petition and remained detained in juvenile hall. In an August 6, 2012 probation report, the multi-disciplinary team, which included DCFS, recommended that Omar be placed on deferred entry of judgment pursuant to section 790[3] with meetings with a probation officer once a month or as needed. Omar would be released to DCFS for placement and would receive individual therapy, drug and alcohol education and random drug testing. It was also recommended that the deferred entry of judgment be subject to numerous conditions, including not being out of the home between 6:00 p.m. and 6:00 a.m. without parental consent, not associating with anyone disapproved of by the parent, probation officer or social worker, cooperating in a plan to control drug or alcohol abuse and submitting to therapy and drug testing.

On August 6, 2012, Omar admitted to one count of attempted taking of vehicle without consent of the owner.[4] (Pen. Code, § 664; Veh. Code, § 10851(a).) The offense was declared to be a felony count and Omar was detained in juvenile hall. On August 8, 2012, Omar appeared for a pre-plea hearing with respect to the section 602 petition charging Omar with possession of metal knuckles. Judge Donna Q. Groman presided. County counsel, Tammy Pruitt, and the social worker, Mr. Howard, appeared on behalf

---

[3] Section 790, subdivision (b) provides: "Upon a finding that the minor is also suitable for deferred entry of judgment and would benefit from education, treatment, and rehabilitation efforts, the court may grant deferred entry of judgment."

[4] This count was added on August 6, 2012 to the section 602 petition and Omar admitted to it as part of a plea agreement. The original count of grand theft auto was dismissed.

3

of DCFS.  The deputy district attorney handling the matter was Mr. Roxas.  Omar, who was present, was represented by deputy public defender Daniel Tiktin.[5]

Judge Groman indicated at the outset that there was "a discussion off the record with respect to the recommendation of 790, which doesn't appear to be workable at this time."  She asked Mr. Tiktin what he wanted to do.  Mr. Tiktin replied, " I believe we're 0 of 15 today, so if we could just confirm the trial date, and I'm going to have a social worker appointed.  And I was going to request if we could have a status next Thursday."  Noting that a hearing on August 16, 2012, will "just to be trial setting," the court advised county counsel and the social worker that they did not need to appear and directed county counsel to give her phone number to the court staff if they needed to reach her.

At the August 16, 2012 hearing, Mr. Tiktin appeared with Mr. Wilson, a different deputy district attorney.  After stipulating that Referee Steve Klaif would serve as temporary judge on the matter, the following colloquy occurred:

"The Court:  "The matter is on calendar for a trial setting, as well as it looks like we have a dispo trailing from a sustained petition out of 240—Department 245.  How are we proceeding?

"Mr. Tiktin:  He's going to admit to the sole count on the open case, and he's got a 790 recommendation, which he's hoping the court would follow.  He brought in some good grades.  And the comment says he's a great student and a pleasure to have in class.

"The Court:  It's amazing how well you can do when you don't have any choice, when you're in school and paying attention.  Because you're apparently capable of doing quite well.  All right.  Are the People in agreement?

"Mr. Wilson:  Is the court in agreement?

"The Court:  We've got one count—

---

[5]     The reporter's transcript misidentifies Humberto Benitez as appearing for Omar and Joel Wilson for the People.  However, Judge Groman identified Mr. Tiktin as Omar's counsel and Mr. Roxas as the deputy district attorney from the bench.  The parties agree that Mr. Tiktin and Mr. Roxas appeared on August 9, 2012.

4

"Mr. Wilson:  Of attempted GTA [grand theft auto] and one count of knuckles, metal knuckles.

"The Court:  And no previous records.  Yeah, we'll give him a shot."

Mr. Wilson then took Omar's plea after informing him of the charges against him, his constitutional rights and the consequences of the plea.  After Omar indicated his understanding, Mr. Wilson and Mr. Tiktin formally joined in the plea agreement. Referee Klaif found that Omar "knowingly, intelligently, voluntarily, expressly waived his right to a trial.  He's aware of the charge against him and the consequence of admission to that charge."  Omar was ordered to be "released to the custody of DCFS" and the trial date was vacated.

The next day, Judge Groman expressed surprise at the section 790 disposition, because she believed "the minor was not suitable for deferred entry of judgment [because of] his unwillingness to stay anywhere."  Judge Groman further noted that "Mr. Tiktin set it for adjudication, and we also set it for trial setting to get more information on the paternal side of the family."  At the hearing, Ms. Pruitt appeared for DCFS and Mr. Wilson appeared for the People.  Omar was represented by a different deputy public defender, Humberto Benitez.  Indicating that she would entertain a motion for rehearing, Judge Groman stated that the "biggest problem that I am faced with now is that the court implicitly made a ruling on the 241.1 issue without county counsel being present and having the opportunity to be heard.  And so that's why there seems to be an issue."

Judge Groman ordered Omar to remain in juvenile hall pending resolution of the rehearing issue.  County Counsel filed an application for a section 252[6] rehearing on August 17, 2012.  Ms. Pruitt submitted a supporting statement which stated, "The court made clear that DCFS social worker and county counsel did not need to appear as 790 was not approved by the court and it would be a simple trial setting and receipt of relative

---

[6]    Section 252 provides in relevant part:  "At any time prior to the expiration of 10 days after service of a written copy of the order and findings of a referee, a minor or his or her parent or guardian or, in cases brought pursuant to Section 300, the county welfare department may apply to the juvenile court for a rehearing."

information for possible suitable placement under 602 supervision on 8-16-12. DCFS was in agreement with the 602 placement based on the AWOL concerns and the fact that Omar would not meet Level 14 criteria."[7]

On August 22, 2012, Mr. Tiktin, Mr. Wilson and Ms. Pruitt appeared to argue "whether the court has the authority to grant a rehearing of the 241.1 issue, which although Referee Klaif did not make an express finding as to the 241.1 issue, it could be inferred that that issue was decided by virtue of the fact that the court had ordered minor be placed on 790, deferred entry of judgment, which would be an informal dual status with DCFS being the lead agency and also being required to place the minor." After hearing from counsel, Judge Groman granted the application for rehearing, reasoning as follows:

" . . . the court does find that DCFS, for purposes of the 241.1 hearing, not only is charged with providing a report but also has the opportunity to be heard through counsel at a hearing under 241.1. Because Ms. Pru[i]tt was specifically informed that there would be no substantive decisions made on August 16th, she was not here. [¶] The court, on August 8th, acknowledged the importance of having DCFS's participation in rendering a decision as to whether the minor should be on dual formal status or dual informal status and had put the matter over for further determination. However, Mr. Tiktin and Mr. Wilson decided—And I know that this is an unfamiliar proceeding, procedure with respect to 241.1, and I trust that counsel just thought that it was appropriate to move forward without the input of DCFS [¶] . . . [¶] However, on August 16th, when counsel proceeded without the benefit of the court hearing from county counsel, I think that that is a violation of due process for the county, which is actually different than probation. Probation is not a party to 602 proceedings; however, DCFS is a party to 300 proceedings and, in my

---

[7] A Level 14 placement is a group home intended to provide services for seriously emotionally disturbed children. (See § 11462.01.)

6

view, is a party to whatever hearing under 241.1 occurs.  Probation is not.  That's just the way the statutory scheme is set.

"But DCFS does have the opportunity to appear at the 241.1 hearing, not only by providing a report with recommendations but to be represented by counsel, if DCFS chooses to have counsel present.

"And so by proceeding with a 241.1 determination on August 16th without affording DCFS due process and the opportunity to be heard, they did not have an opportunity to sign a stipulation, accede to Referee Klaif's apparent implied authority to proceed as a judge would on that date.  They were not here to stipulate, not stipulate, file a 170.6, not file a 170.6 on an issue that is very important to the Department of Children and Family Services and to which this court believes that they are a party and have every opportunity to do so."

Judge Groman then proceeded with the rehearing under section 241.1 and found dual status to be appropriate with probation as the lead agency and DCFS as the secondary agency.  Omar's admission was vacated and Mr. Tiktin entered a plea of once in jeopardy.  Trial on the petition alleging possession of metal knuckles was held on August 29, 2012.  Judge Groman sustained the petition and declared Omar a ward of the court to be held in physical confinement not to exceed three years four months.  Omar timely appealed.

## DISCUSSION

Omar grounds his appeal on the deferred entry of judgment entered by Referee Klaif under section 790.  Omar contends Referee Klaif's order was not subject to rehearing by Judge Groman because the parties stipulated to the referee acting as a temporary judge.  As such, Referee Klaif's order became final in the same manner as orders made by a judge.  The People and DCFS contend that DCFS was a party to the delinquency matter and thus, entitled to be heard on the issue of Omar's dual status as well as the stipulation appointing Referee Klaif as temporary judge.  We disagree.  DCFS did not act as a party in this delinquency action.  Further, it has presented no

7

grounds to unwind the plea agreement reached between the prosecution and the defense and approved by the court.

## I.       Procedure for Dual Status Minors

Section 241.1 sets forth the procedure for the juvenile court to handle cases in which it may have dual bases for jurisdiction over a child.  Under section 300, a child who is neglected or abused falls within the juvenile court's protective jurisdiction as a dependent of the court.  The juvenile court also may take jurisdiction over a minor as a ward of the court when the child is habitually disobedient or truant (§ 601) or commits a crime (§ 602).  Section 241.1 requires that whenever it appears a minor may fit the criteria of both a dependent child and a delinquent ward, the child protective agency and the probation department must present a joint report to "initially determine which status will serve the best interests of the minor and the protection of society." (§ 241.1, subd. (a).)  The juvenile court then must determine the appropriate status for the child.  (*Ibid.*)

"The joint assessment report must contain the joint recommendation of the probation and child welfare departments if they agree on the status that will serve the best interest of the child and the protection of society, or the separate recommendation of each department if they do not agree." (Cal. Rules of Court, rule 5.512(d).)  Dual jurisdiction is generally prohibited; a minor may not be both a dependent child and a delinquent ward of the court absent a written protocol agreed upon by the presiding judge of the juvenile court, the child protective agency and the probation department.  (See § 241.1, subds. (d), (e); *In re Henry S*. (2006) 140 Cal.App.4th 248, 254.)  Under section 241.1, subdivision (e)(5)(B), the agency designated as the lead agency "shall be responsible for case management, conducting statutorily mandated court hearings, and submitting court reports."

The Rules of Court specify when the section 241.1 hearing is to take place:  "If the child is detained, the hearing on the joint assessment report must occur as soon as possible after or concurrent with the detention hearing, but no later than 15 court days after the order of detention and before the jurisdictional hearing.  If the child is not detained, the hearing on the joint assessment must occur before the jurisdictional hearing

and within 30 days of the date of the petition. The juvenile court must conduct the hearing and determine which type of jurisdiction over the child best meets the child's unique circumstances." (Cal. Rules of Court, rule 5.512(e).) In short, the rule contemplates the section 241.1 hearing will occur before a jurisdictional hearing to determine whether a crime has been committed. (Cal. Rules of Court, rule 5.512(e); *In re Greg F.* (2012) 55 Cal.4th 393, 403.) California Rules of Court, rule 5.512(g) further specifies that "[a]ll parties and their attorneys must have an opportunity to be heard at the [section 241.1] hearing."

The juvenile court is permitted to appoint one or more referees to perform "subordinate judicial duties," including issuing orders regarding dual status minors. (Cal. Const., art. VI, § 22; *In re Edgar M.* (1975) 14 Cal.3d 727, 732.) A referee's rulings are subject to rehearing by a judge of the juvenile court on his or her own motion. (*In re Clifford C.* (1997) 15 Cal.4th 1085, 1093; §§ 250 and 253.) "[A] minor or his or her parent or guardian or, in cases brought pursuant to Section 300, the county welfare department may apply to the juvenile court for a rehearing" of any matter heard by a referee as well. (§ 252.) However, "[w]here a referee sits as a temporary judge, his or her orders become final in the same manner as orders made by a judge." (§ 250.) In particular, "a referee shall not conduct any hearing to which the state or federal constitutional prohibitions against double jeopardy apply unless all of the parties thereto stipulate in writing that the referee may act in the capacity of a temporary judge." (§ 248; see *In re Perrone C.* (1979) 26 Cal.3d 49, 57; see also Cal. Rules of Court, rule 2.831.)

## II. Analysis

### A. There Were No Grounds for a Rehearing

The stipulation between Wilson and Tiktin conferred upon Referee Klaif full judicial powers to issue a disposition in this case that was not subject to rehearing by Judge Groman. The California Supreme Court's opinion in *In re Mark L.* (1983) 34 Cal.3d 171 illustrates our point. There, the minor entered a no contest plea to an allegation that he committed felony burglary. (*Id.* at p. 173.) The plea was made before a commissioner sitting as a juvenile court referee. At a subsequent dispositional hearing,

9

the commissioner declared the minor a ward of the court and released him to his parents' custody under a strict county probation program. (*Ibid.*) Acting on his own motion, the presiding juvenile court judge ordered a rehearing under section 253, overturned the commissioner's dispositional order, and placed the minor with the California Youth Authority for evaluation. The minor filed a petition for writ of habeas corpus on the ground the judge had no power to alter the commissioner's ruling. (*Id.* at p. 174.)

The high court found that the People and the minor had a "tantamount stipulation" that the commissioner acted as a temporary judge with full judicial powers. The commissioner repeatedly referred to himself as "the Court" and announced that the minor had a right to a disposition by the same judicial officer as the one who took his plea. Such an obvious reference to *People v. Arbuckle* (1978) 22 Cal.3d 749, without objection from the People, was tantamount to a stipulation the commissioner was acting as a temporary judge. (*In re Mark L., supra,* at pp. 179-180.) Thus, the commissioner's order was final, the rehearing order was beyond the presiding judge's power to make, and the rehearing violated the juvenile's right to disposition by the same judicial officer who took his negotiated plea under *Arbuckle.* The high court found the presiding judge's order on rehearing to be void. (*In re Mark L.,* at p. 180.)

The facts here are more compelling than in *Mark L.* because there was an express rather than an implied stipulation: a standard form stipulation for the appointment of a referee as a temporary judge in the juvenile court was signed by the deputy district attorney representing the People and the deputy public defender representing Omar; the stipulation was approved by signature of the presiding judge of the juvenile court; Referee Klaif also signed the form, consenting to the appointment; the oath of office was administered by the executive officer of the court, who attested to it by his signature. No other signatures were required. Indeed, there was no room to add any signatories on the form. Under *In re Mark L.* and sections 248 and 250, Referee Klaif's order was final and Judge Groman's order of rehearing was beyond her power to make.

10

## B. DCFS Was Not a Party to the Delinquency Action

DCFS[8] attempts to counter the holding in *In re Mark L.* by arguing that it was a party to the proceedings. It disputes the validity of the stipulation appointing Referee Klaif as temporary judge because it did not sign the stipulation and, as a party, it should have. DCFS relies on a footnote in *San Diego County Dept. of Social Services v. Superior Court* (1996) 13 Cal.4th 882, 892 (*San Diego County Dept. of Social Services*), to support its argument. *San Diego County Dept. of Social Services* held that a party who believed circumstances had changed since an order setting the permanent plan as long-term foster care could petition the juvenile court to modify the permanent plan to adoption or legal guardianship. No section 388 petition was necessary, and the juvenile court had the power to determine a change of circumstances made at a party's request. (*Id.* at pp. 888-889.) The party making the request in *San Diego County Dept. of Social Services* was the social services agency. In footnote 4, the California Supreme Court noted that a social services agency was "a party *and sometimes more than a party.* It is a party because it litigates. And it is more than a party when it adjudicates, as in conducting the six-month status review to determine whether long-term foster care continues to be appropriate as the permanent plan." (*Id.* at p. 891, fn. 4.)

The court's footnote illustrates the multiple roles a social services agency has in dependency proceedings. As noted by Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2013) § 2.63[1], p. 2-217, "[t]he social worker has many differing roles and responsibilities within and related to the dependency system. These roles and responsibilities are carried out in a simultaneous, integrated, and ongoing basis. Nevertheless, when possible and appropriate, all parties and courts should take care to ensure they understand which role or responsibility the social worker is fulfilling in a particular activity. This will help to avoid confusion as to that action and how it should be reviewed by the juvenile court, superior court, or administrative agency." In *San Diego County Dept. of Social Services,* for example, the social services agency served an

---

[8] Although the People stipulated to Referee Klaif acting as temporary judge and agreed to the plea bargain, they nevertheless join in DCFS's arguments on appeal.

11

adjudicatory function when it conducted six-month reviews to determine the continued efficacy of a long-term foster care plan under subdivision (d) of section 366.3. (§ 366.3, subd. (d).) By contrast, courts have viewed a social services agency as an impartial arm of the court when it prepares reports for the hearings held by the juvenile court in a dependency matter and makes recommendations to assist the court. (*In re Ashley M.* (2003) 114 Cal.App.4th 1, 7; Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure, *supra*, § 2.63[1], p. 2-217.)

We find DCFS was not a party to this delinquency matter. There is no reason to bootstrap the Supreme Court's footnote in a dependency case into a finding that DCFS is a party in a delinquency matter. Instead, we heed Mr. Seiser's and Judge Kumli's admonition to carefully consider which role DCFS is fulfilling in a particular activity to understand how it is to be reviewed on appeal. Even if we acknowledge that a delinquency matter involving a dual status minor is different from a regular delinquency matter, DCFS presents no authority for the proposition that it is a party in a delinquency action as well as a dependency action. DCFS's role in a section 241.1 hearing is akin to serving as an impartial arm of the court rather than a party who litigates. Under the express terms of section 241.1, DCFS provides the court with guidance, along with the probation department, regarding which status "will serve the best interests of the minor and the protection of society." Nowhere does section 241.1 require that DCFS "litigate" as specified in *San Diego County Dept. of Social Services*.

Neither are we convinced that section 300 confers party status to a social services agency in a delinquency action. DCFS argues, "[b]ecause section 241.1 involves both section 300 and sections 601 or 602, and determines DCFS's role and responsibility with respect to the minor, DCFS is a party. As Judge Groman pointed out, the proceedings addressing whether section 790 was appropriate and which were required to occur before the court conducted the jurisdictional hearing, were necessarily brought pursuant to section 300." DCFS is wrong. It is the later petition (i.e., the petition that creates the potential for dual jurisdiction) that triggers section 241.1. (*In re Marcus G.* (1999) 73 Cal.App.4th 1008, 1013.) In this case, the section 602 petitions triggered section 241.1,

12

not the section 300 petition in 2006. There is no provision in section 241.1 to consolidate the dependency and delinquency actions. Instead, section 241.1 merely provides that notice must be given to the court with initial jurisdiction (here, the dependency court), but it is the delinquency court that determines Omar's status. DCFS presents no authority for the proposition that there exist any parties other than the People and the defendant in a delinquency matter. (See Pen. Code, § 684 ["A criminal action is prosecuted in the name of the people of the State of California, as a party, against the person charged with the offense"].) We also note it does not argue that it was a party for purposes of the plea agreement. As a result, there was no need for DCFS to sign the stipulation appointing Referee Klaif as a temporary judge.[9]

## C. A Valid Plea Agreement was Approved by the Court

DCFS argues that proceeding with a section 790 disposition was invalid because it was deprived of the opportunity to be heard. Presumably, Referee Klaif would not have approved the plea agreement if he was aware that DCFS had changed its recommendation. However, DCFS provides no authority that would allow Judge Groman to invalidate the plea agreement reached between the People and Omar and approved by Referee Klaif. To the contrary, a mistake is not sufficient grounds to invalidate a plea agreement. Omar is entitled to the benefit of his bargain. (*See V.C. v. Superior Court* (2009) 173 Cal.App.4th 1455, 1467 (*V.C.*), disapproved on other grounds in *In re Greg F., supra,* 55 Cal.4th at p. 415.) In *V.C.*, the court explained that "[a]llowing a trial court to rescind a plea bargain that has been accepted and fully executed, because it was unaware of a change in the law in existence at the time of a defendant's admission that if known by it and the parties would have changed the terms or acceptance of the proposed plea, would clearly introduce unacceptable instability in the practice of plea bargaining. No bargain would ever truly be secure." (*V.C., supra,* at p. 1467; see also Rules of Court, Rule 2.831(f) ["[T]hat a ruling is based on error of fact

---

[9] Because we find that Referee Klaif was properly acting as a temporary judge, we need not address DCFS's argument that it had the authority under section 252 to seek a rehearing of a referee's order.

13

or law does not establish good cause for withdrawing a stipulation" for the appointment of a temporary judge.])

DCFS makes much of the fact that defense counsel did not advise Referee Klaif that Judge Groman felt deferred entry of judgment was not advisable or that DCFS's position had changed from the recommendation presented in the joint assessment report, particularly since DCFS was expressly told it did not need to appear for the hearing. DCFS provides no authority to support an argument that Mr. Tiktin was obligated to represent DCFS's interests or relay the opinion of another judge to Referee Klaif. Defense counsel had an obligation to represent the interests of his client, not anyone else. Further, the People were present, had the opportunity to object and failed to do so. That a different prosecutor appeared that day does not change defense counsel's responsibilities. "In plea bargaining arrangements it is the responsibility of lawyers in the prosecutor's office to let ' "the left hand know what the right hand is doing" or has done.' " (*United States v. I.H. Hammerman, II* (4th Cir. 1975) 528 F.2d 326, 331; Couzens, Bigelow & Prickett, Sentencing California Crimes (The Rutter Group 2013) § 2:6, p. 2-11.)

### D. The Doctrine of Invited Error Does Not Apply

DCFS further argues that Tiktin's failure to advise Referee Klaif of these positions invited any error resulting from the rehearing. Invited error occurs "where a party, for tactical reasons, persuades the trial court to follow a particular procedure. The party is estopped from claiming that the procedure was unlawful." (*In re Jamie R.* (2001) 90 Cal.App.4th 766, 772.) Invited error does not apply here because Omar does not claim that the procedure he advocated for (i.e., stipulation and deferred entry of judgment) was unlawful. Further, Judge Groman expressly stated that she did not find Tiktin had tried to defraud the court, unlike the defendant in *People v. Malveaux* (1996) 50 Cal.App.4th 1425, 1440-1441. We thus reject DCFS's invited error argument.

14

## DISPOSITION

The dispositional order issued by Judge Groman on August 29, 2012 is reversed. We remand the matter to reinstate Referee Klaif's findings and orders made on August 16, 2012.


BIGELOW, P. J.

We concur:


FLIER, J.


GRIMES, J.